At Attorney Lafayette's request, counsel to the United States trustee spoke first at trial. He argued first that a reasonable range of hourly rates for Chapter 13 practitioners in this district was from $150 to $225 per hour, and that it was Attorney Lafayette's burden to show otherwise. He then addressed the various excuses raised by Attorney Lafayette with respect to his service failures to the instant debtors, characterizing them as sloppy and careless. Further, he noted that, if credence were to be given to Attorney Lafayette's various claims of medical disability, he had serious concerns about such an attorney continuing to render services in a state of diminished capacity. He expressed fears for the legal well-being of all consumer debtors under Attorney Lafayette's care.

Attorney Lafayette responded to the question of the applicable lodestar rate in two ways. First, he argued that any prospective setting of the lodestar rate in future cases was "highly unconstitutional,"[18] because it deprived him of "an opportunity to earn a living and to process the law associated with those cases." Second, although Attorney Lafayette maintained on the one hand that he "accepted" the rulings in Grenier and Martinez, infra, particularly with respect to whether a typical Chapter 13 case consumed an average of 10 hours of attorney work, he quarreled with the rate set in those cases. He argued that the court had miscounted in calculating his rate at $225. Considering the $2,500 fee set in MBLR 13-7(b), discussed in greater detail below, the court should, according to Attorney Lafayette, have found an appropriate hourly rate for Chapter 13 practitioners to be $250 ($2,500 divided by 10 hours). Attorney Lafayette said he could not offer further insight into

---

[18] He did not cite the applicable provision of the United States Constitution.

30

case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. §330(a)(4)(B) (2004).

And §330 further instructs with respect to compensation under any chapter:

In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including -

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3) (2004).

In this Circuit, the methodology employed to evaluate the reasonableness of compensation for professionals is the "lodestar" approach. See Boston and Maine Corp. v. Moore, 776 F.2d 2, 6-7 (1st Cir.1985); Furtado v. Bishop, 635 F.2d 915, 920 (1st Cir.1980); Garb v. Marshall (In re Narragansett Clothing Company), 210 B.R. 493, 497 (1st Cir. BAP 1997); In re Bank of New England Corp., 142 B.R. 584, 586 (D. Mass. 1992); In re Act Manufacturing, 281 B.R. 468, 479 (Bankr. D. Mass. 2002); In re Anolik, 207 B.R. 34, n.11 (Bankr. D. Mass.1997); In re 1095 Commonwealth Ave. Corp., 204 B.R. 284, 290 (Bankr. D. Mass. 1997); In re Smuggler's Beach Properties, Inc., 149 B.R. 740, 743 (Bankr. D. Mass. 1993); In re First Software Corp., 79 B.R. 108, 112-13 (Bankr. D. Mass.1987); In re WHET, Inc., 58 B.R. 278, 285 (Bankr. D. Mass.1986). Courts first develop a point of

32

reference by determining a reasonable billing rate and then multiplying it by the number of hours which appropriate tasks should have consumed. Narragansett Clothing Company, 210 B.R. at 497.

The lodestar rate ought to take into account the type of work performed, who performed it, the expertise that it required, and when it was undertaken. Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950-51 (1st Cir. 1984). The court must "consider prevailing market rates in determining the lodestar, based on usual and customary rates in the jurisdiction . . . . No presumption exists that a professional is entitled to the amount he or she requests." Narragansett Clothing Company, 210 B.R. at 498-99. Once determined, the applicable rate is multiplied by the hours reported, after those which are duplicative, unproductive, excessive, or otherwise unnecessary are subtracted. Grendel's Den, Inc. v. Larkin, 749 F.2d at 950.

> Finally, the lodestar is adjusted by various factors, including:
>
> (1) the time and labor required: (2) the novelty and difficulty of the questions presented by the case; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time pressures imposed by the client or the circumstances; (8) the amount involved and results obtained as a result of the attorney's services; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Smuggler's Beach Properties, Inc., 149 B.R. at 743; In re First Software Corporation at 112.

Anolik, 207 B.R. at n.11.

The Court has an independent judicial responsibility to review the fees of professionals, even in the absence of an objection by a party in interest. In re First

Software Corporation, 149 B.R. at 111. The burden of proof is on the party requesting a compensation award.  Narragansett Clothing Company 210 B.R. at 498.  Where no evidence is presented to establish the customary rate, the court must rely "upon its own expertise in judging market rates for professionals in the jurisdiction in which it sits." Id. at 499.

Measuring proper compensation in Chapter 13 cases presents special challenges. Section 330(a)(4)(B) specifically directs the Court's attention to the welfare of the debtor rather than that of the bankruptcy estate.  11 U.S.C. §330(a)(4)(B) (2004).  Furthermore, the economics of practice under Chapter 13 is different from those under Chapters 7 or 11. In Chapter 7 cases, counsel to the individual debtor is paid by the debtor, but is likely to be confronted with a finite set of problems (e.g., relating to exemptions and discharge) to be overcome within a rather limited period of time.  In Chapter 11 cases, counsel to the debtor in possession may be called upon to perform extensive services, but can be paid from funds of the estate.  See Lamie v. United States Trustee, 540 U.S. --- , 124 S. Ct. 1023 (2004); 11 U.S.C. § 1106; §327.  But in Chapter 13, while the amount of available funds to pay for services may be small, the debtor's needs may be extensive.  Proper representation of a Chapter 13 debtor requires the time and patience to identify the source of the debtor's financial difficulty in order to draft a reorganization plan that best addresses the debtor's problems. Once drafted, the reorganization plan may have to be negotiated with creditors and the Chapter 13 trustee, and may have to be amended, sometimes more than one time.  Disputes as to the propriety of the plan's terms may spill out into the courtroom; and, once disputes are resolved, further plan modification may be required in order to achieve confirmation.  And after all of that, the debtor may default and require

34

further legal assistance. Plan defaults, as well as defaults in the monthly payment of home mortgages, are commonplace.

The resources available to fund the typical Chapter 13 case come from the Chapter 13 debtor, an individual with a self-evident inability to raise substantial funds. The economics of a Chapter 13 practice therefore require that counsel to the Chapter 13 debtor use appropriate techniques in order to reduce the costs of doing business. The development of a practice with some measure of volume is commonplace; the employment of paralegals to reduce the average billable rate and the introduction of computer technology to reduce work time is often a necessity. Yet all of the business efficiencies must be fashioned so that they do not interfere with the high quality of legal services which Chapter 13 debtors deserve and the bankruptcy courts expect of all attorneys who practice before them.

The focus that §330(a)(4)(B) places upon the benefit of legal services to the Chapter 13 debtor, together with the unique economics of the Chapter 13 practice, has encouraged courts to seek efficiencies as well. While not abandoning the lodestar methodology entirely, some courts have adopted a "no look", "presumptive" or "initial fixed" fee standard to be applied to the "routine tasks" attendant to most Chapter 13 cases. See, e.g., In re Eliapo, 298 B.R. 392, 399-400 (9th Cir. BAP 2003)(collecting cases); In re Argento, 282 B.R. 108, 116-17 (Bankr. D. Mass. 2002); see also, Keith M. Lundin, Chapter 13 Bankruptcy, 3d Ed., Debtors' Attorney's Fees § 294-18 - 294-24. Typically, this method assumes that tasks common to all Chapter 13 cases will be covered by a standard fee promulgated in a local rule or guideline. Additional services relating to any unique

35

complexities of the case are then measured through some variant of the lodestar methodology.

The bankruptcy judges in the District of Massachusetts have retained the lodestar approach in evaluating fees for services rendered to debtors in Chapter 13 cases and have chosen not to adopt a fixed or presumptive fee. Often misunderstood, MLRB 13-7(b) is a rule of procedure rather than one of substance. It provides:

> Unless otherwise ordered by the Court, if debtor's counsel's total compensation prior to confirmation of a plan is $2,500 or less, the disclosure of the compensation in the Rule 2016(b) Statement shall be sufficient notwithstanding compensation for post confirmation services in amount not exceeding $500, and the filing of an itemized application for compensation shall be excused, unless the Court orders otherwise.

The message of Rule 13-7(b) is clear: if the fees of counsel to the debtor in a Chapter 13 case do not exceed $2,500 for prepetition services and $500 for postpetition services, then the attorney need neither amend a lesser disclosure in the attorney's Fed. R. Bankr. P. 2016(b) Statement, nor file a fee application in order to be entitled to payment - unless the Court orders differently. The assumption underlying Rule 13-7(b) is not that $3,000 is some form of floor or ceiling for appropriate compensation for debtor's counsel in a Chapter 13 case. Rather, the rule recognizes that it is so unlikely that the Court will disallow compensation of $3,000 or less when an attorney renders beneficial legal services to a Chapter 13 debtor that the preparation of a fee application would waste judicial resources and drive up costs to a debtor whose funds are better spent on a dividend to creditors. The Rule contains the fail-safe clause "[u]nless otherwise ordered by the Court" in order to ensure its underlying premise: that Rule 13-7(b) should have effect only where the Court believes it likely that the debtor receive beneficial services from debtor's counsel.

36

B.    The Various Fee Applications

Consideration of the instant fee applications begins with the selection of the lodestar rate. The United States trustee and the Chapter 13 trustee urge the Court to adopt the billing rate of $225 per hour selected in Grenier and Martinez. Attorney Lafayette's responses are are both inconsistent and inexplicable. While billing in amounts over $300 in each of the instant cases, he testified at the evidentiary hearing in connection with the Case Management Order first that he accepted the Grenier and Martinez rulings, then that they were wrong, and then that he found the inquiry "mind-boggling." More important, Attorney Lafayette offers absolutely no evidence to support any rate at all. In the absence of evidence to the contrary, this Court is left to take judicial notice of the average billing rates in Chapter 13 cases in the Western Division of the District of Massachusetts. This Court agrees with Grenier and Martinez that the average billing rate for services in Chapter 13 cases in the City of Worcester, Massachusetts is in the range of $150-225 per hour, and believes it no different in the four most western counties of this district. But this Court respectfully disagrees with the decision in those cases to place Attorney Lafayette at the upper end of that range. Careless and sloppy work, from which Attorney Lafayette's clients repeatedly required court intervention and rescue, suggest either that Attorney Lafayette's skill level is not consistent with that of the average practitioner or that he is not sufficiently motivated to bring it to that level. Accordingly, this Court sets Attorney Lafayette's lodestar rate at $150 per hour for each of the instant fee applications.

Identification of the number of appropriate billable hours and application of adjusting factors with respect to each of the fee applications now before the court requires more detailed scrutiny.

37

In LaFrance, as noted by the Chapter 13 trustee, the listing of time (and attendant division of labor between Attorney Lafayette and his paralegals) makes little sense. Further, the identification of the amount of the retainer is contradictory with other filings made by Attorney Lafayette. Attorneys must scrupulously maintain the accuracy of their time entries and their billing records. This Court's review of Attorney Lafayette's fee application confirms the Chapter 13 trustee's concerns. Attorney Lafayette, who had the burden to do so, failed to respond to those concerns either in writing or at the evidentiary hearing. Affording Attorney Lafayette with perhaps more benefit of the doubt than deserved, the Court will not reduce the number of hours represented in the fee application, but will acknowledge the problems cited by the Chapter 13 trustee by reducing the final allowance by the sum of $500. The resulting calculation is that Attorney Lafayette spent 12.8 hours at the lodestar rate of $150, for a total of $1,920, to which should be added $176.50 for services rendered by paralegals and $254.16 for reimbursable out of pocket costs.[19] From this amount, the Court will reduce the application by $500 for a total of $1850.66, against which Attorney Lafayette received an initial retainer from the client in the amount of $600.[20]

Review of the remaining cases does not require similar mathematical analysis. There, the deficiencies in service are so substantial as to render moot a review of time

---

[19]Neither the Chapter 13 trustee nor the United States trustee has challenged the rate charged by Attorney Lafayette for work performed by his paralegals or his requests for reimbursement of out of pocket costs.

[20]The Court has not, on this occasion, further reduced the award based on the confusing language in the Rule 2016(b) Statement filed by Attorney Lafayette in this and the following cases. That language should be altered in future cases to avoid reductions in compensation.

spent and disbursements incurred. In Oyola, Attorney Lafayette twice filed Schedule C offerings which substantially exceeded any conceivable exemption, and ignored the Chapter 13 trustee's requests for repair until she was forced to bring her objection to the Court. In Rolon, Attorney Lafayette filed the case in Chapter 7, notwithstanding the fact that the debtor could not obtain a discharge there because of the recency of another Chapter 7 discharge in a case in which Attorney Lafayette had also served as debtor's counsel. And, on conversion of the case to Chapter 13, Attorney Lafayette repeatedly filed inaccurate schedules, and even missed a deadline that, for a time, caused the case to be dismissed.    In Daigneault, Attorney Lafayette failed to timely amend an obviously unconfirmable plan and then, after the Chapter 13 trustee was forced to file an objection thereto, failed to timely comply with this Court's order to amend that plan. He even missed the deadline for filing his own request for compensation. In Caci, Attorney Lafayette failed to provide a proper disclosure to the debtors with respect to the identity and qualifications of a recommended "expert;" failed also to disclose that he represented that "expert" in another matter; represented that "expert" in a contest in which the debtors here had a conflicting interest; failed to properly advise the debtors with respect to the need to approve the employment of their broker; failed to timely respond to their request that a sale of their property be approved; failed to timely seek reconsideration of orders; failed to prepare appropriate notices to creditors; and failed to timely advise the Court either that a closing date for the sale had been postponed or that a document offered to the Court in one motion was an altered version from that presented in another. Finally, in Davis, Attorney Lafayette made various errors on the debtor's schedules and plan, failed to timely respond

39

to the Chapter 13 trustee's request that he rectify the errors, and failed to timely comply with this Court's order to the same effect.[21]

Attorney Lafayette offers excuses for each of the foregoing lapses. He cites either the disabilities of his computer software, temporary illnesses of his paralegals, or chronic illnesses of his own. None of these justify what Attorney Lafayette has done (or not done) in these cases. The products of computer software must always be reviewed by an attorney who depends on the program. Clients hire attorneys, not computers. Notwithstanding the obvious benefits which computers afford, they have no fiduciary duty toward those who rely upon them; attorneys do. As for paralegals, they do from time to time get sick, or take vacation, or sever their relationship with attorneys. When that happens, an attorney must timely replace those services with those of another paralegal of sufficient skill or step in to do that work him or herself (for which the attorney is presumably more than capable). And when, for whatever reason, that is not possible, an attorney is obliged to seek a continuance before, not after, a Court-ordered deadline has run.

The illness of an attorney presents special concerns, since those services are not easily replaced either on a temporary basis or for an extended period of time. When an attorney has a temporary illness, other attorneys in the case have a duty of courtesy to one another, and the court has a duty to ensure that the illness does not affect the

---

[21] The Court does not here list <u>Bennett</u>, since Attorney Lafayette's request for compensation has already been denied for untimeliness, and that denial has been affirmed by the United States District Court for the District of Massachusetts. The Court would note, however, that, in the <u>Bennett</u> case, Attorney Lafayette also made various errors in the schedules and plan (including listing both federal and state exemptions in Schedule C) and failed to rectify those errors in a timely manner.

40

administration of justice.  Where time is not of the essence, continuances ought to be granted or other accommodations made.  But where illness become a daily or weekly excuse for repeated errors made over an extended period of time and which threaten to sacrifice a client's economic well-being, courtesy is no longer a factor.  An attorney may simply not permit his or her client to suffer legal harm, even where the excuse is the attorney's long term illness.  Many attorneys suffer from long-term or chronic illnesses and manage quite well to represent their clients without sacrificing the rights of those clients. An attorney suffering from such an illness must obtain appropriate assistance or supports to avoid reasonable risks of harm to clients, and, failing that, withdraw from ongoing representations and decline to take on new cases.[22]

This Court finds it hard to believe, and does not believe, that most (if any) of the various errors described in each of the above referenced cases are the result of the various excuses proffered by Attorney Lafayette.  But even if the excuses are true, they are not sufficient to overlook the sloppy, careless and unprofessional actions taken by Attorney Lafayette in each of the referenced cases.  Clients come to attorneys for a service.  Where the service is not provided, or provided poorly, they should not be required to pay for the service, regardless of the validity of the excuse offered.  Accordingly, compensation in each of the Oyola, Rolon, Daigneault, Caci and Davis cases will be disallowed and all payments received, except for filing fees, will be ordered disgorged.

---

[22]During the year 2002, Attorney Lafayette filed 316 cases in this district (approximately 26 per month); in the year 2003, 260 cases (approximately 22 per month); and for the first five months of 2004, 118 cases(approximately 24 per month).  Furthermore, during this period of time, this Court has frequently granted continuances to permit Attorney Lafayette to travel to far distant locations with bar groups, something not usually within the ability of a person limited by illness.

41

C. <u>MLRB 13-7(b)</u>

The judges of this district have promulgated MLRB 13-7(b) with the assumption that an attorney relying thereon is generally rendering beneficial legal services to his or her clients. For the reasons set forth above, this Court can no longer maintain that assumption in cases in which Attorney Lafayette represents the debtor. Accordingly, the Court will order that MLRB 13-7(b) shall not apply in such cases. Absent an allowed fee application, Attorney Lafayette shall not be permitted to use fees received hereafter from clients in bankruptcy cases,[23] nor shall the Chapter 13 trustee be permitted to pay fees to Attorney Lafayette. That order will be reviewed at various intervals to determine its ongoing necessity.

In no way should these actions be misinterpreted as attorney discipline. Whether Attorney Lafayette should be practicing before this Court, or any other, is left for the determination of those bodies who have the jurisdiction to say so. 'See <u>Sheridan v. Michels</u> (In re <u>Sheridan</u>), 362 F.3d 96 (1st Cir. 2004). In <u>Sheridan</u>, the First Circuit Court of Appeals reversed the Bankruptcy Appellate Panel; which had affirmed a bankruptcy judge's ruling suspending an attorney from practice before the Court. The First Circuit held that where a disciplinary proceeding is omnibus in nature, does not arise in the context of an open bankruptcy case, is predicated upon ethical rule violations proscribed by state law and has only a remote or overly speculative effect upon closed bankruptcy cases, a bankruptcy judge has only non-core jurisdiction . <u>Id</u>. at 111-12. None of those conditions are presented here. This is not a disciplinary proceeding that will preclude Attorney Lafayette

---

[23]Until fees are allowed, funds received from clients shall be held in Attorney Lafayette's IOLTA account, as would be the practice in the absence of MLRB 13-7(b).

from practice before the bankruptcy courts of this district. The instant issues arise in the context of open cases. The review of fees paid by a debtor to his or her counsel arise under bankruptcy law, most notably 11 U.S.C. § 327 and 329. And the decisions made here will likely positively impact both the debtors now before the court and those that will come before the court hereafter.

Said in perhaps too summary a fashion, the holding of <u>Sheridan</u> is that the Massachusetts bankruptcy courts do not have the power to suspend or disbar attorneys from practice because they do not have the power to admit attorneys to practice. The latter is the province of the United States District Court. But Congress gave to bankruptcy courts the power to determine the proper compensation of attorneys who represent debtors. 11 U.S.C. §§ 327, 329 (2004). And the method by which requests for compensation will be presented to the Court is well within the core jurisdiction of bankruptcy courts. 28 U.S.C. §§ 157(b)(2)(A) and (B). The bankruptcy judges of this district were not required to promulgate MLRB §13-7(b). They could have required applications for compensation to be presented by all attorneys who represent debtors in Chapter 13 cases. By the same token, no judge is precluded from using the saving language contained in that rule ("Unless otherwise ordered by the court") to restrict its use when the assumption underlying the rule (beneficial services to debtors) is not evident.

IV.    CONCLUSION

By order of even date, this Court shall order that:

1.    Attorney Lafayette file within 14 days from the entry of such order an updated statement in each of the <u>LaFrance</u>, <u>Oyola</u>, <u>Rolon</u>, <u>Daigneault</u>, <u>Caci</u> and <u>Davis</u> cases listing:

43

a.   the dates and amounts of all payments received from the debtors and/or the Chapter 13 trustee; and

b.   the allocation of any payment received to fees and expenses; and

2.   the Chapter 13 trustee file within 7 days thereafter a response to the foregoing statements <u>only</u> if her records of payment differ from those of Attorney Lafayette;

3.   within 45 days of the entry of the said order, Attorney Lafayette disgorge to each of debtors in the <u>Oyola</u>, <u>Rolon</u>, <u>Daigneault</u>, <u>Caci</u> and <u>Davis</u> cases all payments received from the debtors and/or the Chapter 13 trustee, excluding only the filing fee, and file with this Court within 7 days thereafter a certificate of compliance together with a copy of each check;

4.   within 30 days of the entry of the said order, Attorney Lafayette disgorge to the debtor in the <u>LaFrance</u> case so much of the payments received from the debtor and/or the Chapter 13 trustee which may exceed the amount allowed herein, and shall file within 7 days thereafter a certificate of compliance together with a copy of his check to the debtor, if any;

5.   within 120 days of the entry of the said order, Attorney Lafayette file a fee application in each Chapter 7 and 13 case in the District of Massachusetts in which he appears on behalf of a debtor, but only if he has a claim for unpaid compensation or expense reimbursement either against the debtor or the estate;

6.   Attorney Lafayette's claim for unpaid compensation or expense reimbursement be deemed waived in any case in respect to which he fails to comply with paragraph 5 above; and

7.   on and after the entry of this order, the Chapter 13 trustee not make any payments to Attorney Lafayette on account of any request for compensation or reimbursement of expenses absent a court order;

8.   on and after the entry of this order, Attorney Lafayette deposit any payment received from a Chapter 13 or 7 debtor in the District of Massachusetts in his client trust account and refrain from disbursing those funds until and unless a fee application permitting such disbursement is granted by the bankruptcy judge assigned to such case, unless such judge orders otherwise; and

44

9.    the terms set forth in paragraphs 7 and 8 hereof be reviewed by this Court at intervals set by the court in its sole discretion, the first such review to occur approximately 12 months herefrom.

DATED:    June 10, 2004

Henry J. Boroff
United States Bankruptcy Judge

cc:    Francis Lafayette, Esq.
Denise Pappalardo, Chapter 13 trustee
United States trustee
Debtors

45

# United States Bankruptcy Court
## District of Massachusetts

)
In re:                          )
)        Chapter 13
STEFAN DAVIS,                    )
)        Case No. 03-40199-HJB
Debtor             )
)

**ORDER**

For the reasons set forth in this Court's Memorandum of Decision of even date, and pursuant to this Court's Case Management Order of June 24, 2003, it is hereby

ORDERED that:

1.    within 120 days of the entry of this order, Attorney Lafayette file a fee application in each Chapter 7 and 13 case in the District of Massachusetts in which he appears on behalf of a debtor, but only if he has a claim for unpaid compensation or expense reimbursement either against the debtor or the estate;

2.    Attorney Lafayette's claim for unpaid compensation or expense reimbursement be deemed waived in any case in respect to which he fails to comply with paragraph 1 above; and

3.    on and after the entry of this order, the Chapter 13 trustee not make any payments to Attorney Lafayette on account of any request for compensation or reimbursement of expenses absent a court order;

4.    on and after the entry of this order, Attorney Lafayette deposit any payment received from a Chapter 13 or 7 debtor in the District of Massachusetts in his client trust account and refrain from disbursing those funds until and unless a fee application permitting such disbursement is granted by the bankruptcy judge assigned to such case, unless such judge orders otherwise; and

5.    the terms set forth in paragraphs 7 and 8 hereof be reviewed by this Court at intervals set by the court in its sole discretion, the first such review to occur on June 15, 2005 at 2:00 p.m. in Springfield, Massachusetts.

DATED:    June 10, 2004

Henry J. Boroff
United States Bankruptcy Judge

cc:    Francis Lafayette, Esq.; Denise Pappalardo, Chapter 13 trustee; United States trustee; Stefan Davis

2

**United States Bankruptcy Court**

**District of Massachusetts**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 13 |
| STEFAN DAVIS, | ) | |
| | ) | Case No. 03-40199-HJB |
| Debtor | ) | |

**ORDER**

The instant Notice of Appeal of this Court's order of June 10, 2004 was filed

untimely, pursuant to Fed. R. Bankr. P. 8002(a).  Accordingly, pursuant to authority

granted and direction provided by LR, D.Mass. 203(a), this Court hereby dismisses the

said appeal  for want of jurisdiction. See In re Abdallah, 778 F.2d 75, 77 (1st Cir. 1985).

DATED:      June 29, 2004

Henry J. Boroff
United States Bankruptcy Judge

cc:    Francis Lafayette, Esq.
       Denise Pappalardo, Chapter 13 trustee
       United States trustee
       Stefan Davis

# United States Bankruptcy Court
## District of Massachusetts

|  |  |
|---|---|
| In re:<br><br>STEFAN DAVIS,<br><br>            Debtor | Chapter 13<br><br>Case No. 03-40199-HJB |

### ORDER

For the reasons set forth in this Court's Memorandum of Decision of even date, the "Motion for Reconsideration and to Allow Late Filing of Appeal on Grounds of Excusable Neglect (Fed. R. Bankr. P. 8002(c))" filed by Attorney Francis Lafayette is DENIED.

DATED:      July 8, 2004

                                           Henry J. Boroff
                                           United States Bankruptcy Judge

cc:    Francis Lafayette, Esq.
       Denise Pappalardo, Chapter 13 trustee
       United States trustee
       Stefan Davis